**Leo COLLINS, Appellant**
**(Employee-Claimant),**

**v.**

**GOEMAN GENERAL TIRE, Appellee**
**(Employer-Defendant).**

**No. 84–3.**

Supreme Court of Wyoming.

June 18, 1984.

David A. Drell, Casper, for appellant.

Thomas F. Reese of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN, and CARDINE, JJ.

CARDINE, Justice.

This appeal is from an order denying benefits under the Worker's Compensation Act. The court held that appellant's present medical problems were not related to the injury suffered in a work-related accident. We will affirm.

Appellant was employed by appellee Goeman General Tire. On June 30, 1981, he was changing a tire on a semitrailer. A truck backed into the trailer, knocking it off the jack and causing the trailer to roll across his left foot injuring his ankle. He was immediately seen by doctors who informed him that his left foot was badly sprained. These bills were paid without protest from the employer. Appellant returned to work the day after the accident and continued working at Goeman General Tire until he left their employment approximately two months after the accident. He next consulted Dr. Bailey concerning this injury in February 1982, although this visit was primarily for a back injury. Nothing was done at that time. In April of 1982, he consulted Dr. Nastasi about the back injury and mentioned that his ankle was swollen. In July of 1982, Doctor Behrens had three-way view x-rays taken of the ankle and told appellant that there was no instability in the ankle and that his symptoms were minimal. He was given a brace for his ankle. Claims were presented for medical and temporary disability in April of 1983 and objected to by appellee. In July of 1983 appellant again consulted Dr. Nastasi about his ankle because of swelling and pain. Dr. Nastasi had x-rays taken of the

ankle under stress which revealed loose bone chips. At a hearing held on September 12, 1983, the district court denied benefits to appellant.

The only question presented for review is:

Whether there was substantial evidence to support the finding by the examining physician that causation did not exist.

■ Appellants in worker's compensation cases have the burden of proving by a preponderance of the evidence each element of their claim.[1] *Consolidated Freightways v. Drake*, Wyo., 678 P.2d 874 (1984); *Randell v. Wyoming State Treasurer, ex rel. Wyoming Worker's Comp. Div.*, Wyo., 671 P.2d 303 (1983). Findings of facts which are supported by substantial evidence will not be disturbed on appeal. *Randell v. Wyoming State Treasurer, ex rel. Wyoming Worker's Comp. Div.*, supra; *Williams v. Northern Development Co.*, Wyo., 425 P.2d 594 (1967). Where an appeal is based entirely upon the trial court's alleged erroneous determinations of facts, it is only necessary for the supreme court to search the record to ascertain if substantial evidence supports the trial court's conclusions and judgment, even though these findings are made upon conflicting testimony. *Plummer v. Gladstone Hotel*, 78 Wyo. 427, 328 P.2d 1118 (1958).

■ Dr. Anthony Nastasi testified that x-rays of the ankle taken in July 1983 revealed loose chips which had fragmented from the bone of the ankle. He initially stated that this type of injury was consistent with a semitrailer falling on an ankle if that had been the only injury which had occurred. However, when the doctor was asked if this injury was consistent with an employee going back to work and continuing employment without difficulty for several weeks, he stated:

1. Section 27–12–603(a), W.S.1977, provides in part:

"(a) The burden of proof in contested cases involving injuries which occur over a substantial period of time is on the employee to make proper proof of his claim by a preponderance of the evidence, and to also prove by compe-

tent medical authority that his claim arose out of and in the course of his employment, by showing by a preponderance of evidence that: "(i) There is a direct causal connection between the condition or circumstances under which the work is performed and the injury."

"A. I would say that that's odd. I mean if he injured it that badly to cause chip fractures in his ankle, I would suspect that the ankle would have been, you know, swollen, painful, difficult to bare [sic] weight. Yeah, history like that would make me suspect."

He also stated:

"The point that bothers me here is that the fact after sustaining an injury like this, this gentleman was able to go back to work."

At the time of this deposition, the parties were unsure of the dates when appellant had seen doctors. However, when the doctor was asked:

"Q. If that medical history is different than what you've related to us at that time, and if it actually turned out to be *that he did not see a doctor for almost eight months*, would your opinion change?" (Emphasis added.)

he stated:

"A. I think it would. Eight months is too long to walk around on an ankle with loose bodies without anything surfacing as far as symptomatology goes. Here again, you know, I have, 'Did this man have in fact problems with the ankle?' I did not specifically question him about that. Did he have problems with that ankle? Did he go back to work in spite of the fact the ankle was bothering him? Does anyone know?"

This kind of testimony was found by the trial judge not sufficient to satisfy appellant's burden of proof. Appellant continued working and did not see a doctor about his ankle injury from the time of the accident until eight months later. No instability was found in July 1982, and the three-view x-rays taken did not disclose bone chips. There was substantial evidence to support the trial court's finding that the injury occurring on June 30, 1981, was not a proximate cause of appellant's present medical bills.

The trial court's decision, therefore, is affirmed.