Bruce RUSSELL, Appellant (Petitioner),

v.

STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION; and Fluor Daniel, (NPOSR), Inc., Appellees (Respondents).

No. 97–7.

Supreme Court of Wyoming.

Sept. 15, 1997.

Deborah Ford Mincer, Cheyenne, for Appellant.

Stephenson D. Emery and Stuart R. Day of Williams, Porter, Day & Neville, P.C., Casper, for Appellee Fluor Daniel (NPOSR), Inc.

William U. Hill, Attorney General; Gerald W. Laska, Sr. Assistant Attorney General; Pam Brontos, Student Extern, for Appellee State of Wyoming.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

Several months after injuring his back at work, Appellant Bruce Russell (Russell) filed for workers' compensation benefits for treatment of numbness in his extremities. A hearing examiner from the Office of Hearing Examiners (OAH) allowed his claim but ruled his health problems were not caused by a work-related injury and denied benefits. Russell petitioned for review of that decision, contending the hearing examiner did not have subject matter jurisdiction over a medically contested case, and the decision was not supported by substantial evidence.

We affirm.

## ISSUES

Russell presents these issues for our review:

I. Whether the Office of Hearings and Appeals' decision was in accordance with law and within statutory jurisdiction?

II. In the alternative, pursuant to Wyo. Stat. 16–3–114(c)(ii)(A), (D) and (E), whether the decision was arbitrary and capricious in that it was made in disregard of applicable law, procedures and evidence in the case and was unsupported by substantial evidence?

Appellee Workers' Compensation Division (Division) restates the issue as:

Whether substantial evidence supports the hearing examiner's second conclusion that Claimant failed to prove his injury arose out of and in the course of his employment.

Appellee and employer Fluor Daniel states the issue as:

Viewed in the light most favorable to Flour [sic] Daniel and the Division, does the record contain substantial evidence to support the Office of Administrative Hearings' second order denying benefits?

## FACTS

After completing a pre-employment physical on September 7, 1994, that gave him a clean bill of health, Russell began working for Fluor Daniel on September 12, 1994. On October 3, 1994, Russell injured his back while working and reported it to a supervisor. A written accident report was completed that day. He was given a back brace, worked the rest of the day, and continued to wear the back brace for another two days. Later in the month, Russell experienced numbness in one arm and leg and saw Dr. Dana Ideen about it on November 4, 1994. Russell thought the numbness might be a circulation problem, and Dr. Ideen, a family practitioner, referred Russell to a neurologist, a vascular specialist, and later, to the Mayo Clinic. After Russell's visit to the Mayo Clinic on February 6, 1995, Dr. Ideen advised Russell that the October back injury might be causing his back problem and recommended he not return to work because of his back injury. Russell filed a workers' compensation claim on February 16, 1995, for the October back injury.

The Division denied benefits, and a contested case hearing was held. The hearing examiner determined that the primary issue was whether or not the back injury was work-related and received into evidence various medical reports of Dr. Ideen, the Mayo Clinic, and other specialists' interpretations of the result of magnetic resonance imaging (MRI) indicating a bulging disc. At the hearing, Dr. Allerheiligen, the director of Wyoming Medical Center's Department of Occupational Medicine, reviewed the medical records and testified Russell's symptoms were most likely caused by fibromyalgia, otherwise known as myofascial pain syndrome and the disc problem seen on the MRI report was of no "clinical significance."

The hearing examiner concluded that the evidence showed that one of three possibilities was most likely true: Russell has fibromyalgia and the disc problem is not clinically significant; Russell has a circulatory problem caused by a pre-existing condition; or if Russell's back pain was caused by trauma, it preceded the October 3, 1994, injury and any injury on that date had resolved. The hearing examiner issued an order denying benefits, and that order was upheld by the district court.

Russell filed a petition for review, and this Court subsequently entered an order permitting the presentation of additional evidence before the hearing examiner. Another contested case hearing was held on June 14, 1996, and additional evidence was received. That additional evidence included deposition testimony from Dr. Kenneth Pettine, a board certified orthopaedic surgeon. Dr. Pettine had performed back surgery on Russell on December 27, 1995, and repaired a torn disc. Dr. Pettine testified that the torn disc was the result of the work-related injury Russell suffered on October 3, 1994. Another doctor, Dr. Ruttle, reviewed Russell's medical records from the previous hearing, Dr. Pettine's records, and Dr. Pettine's deposition testimony. Based on the history, he concluded that the injury was not work-related, but was the result of "cumulative trauma."

The hearing examiner found that Dr. Pettine's conclusion that the injury was work-related was based solely on the history supplied to him by Russell. The examiner's findings of fact focused on the early medical reports and testimony by Russell's co-workers, both of which indicated that the October 3 injury was minor and had resolved itself. The findings noted that Dr. Ideen's handwritten notes from Russell's first appointment did not contain any reference to a work injury. Those notes did contain a reference to Russell's building a house in the previous few months. Because Dr. Ideen's notes did

not reference the work injury but did reference Russell's building a house, the hearing examiner concluded the following:

> This leads this Hearing Examiner to find it is most likely the Claimant told Dr. Ideen he had been building a house in the previous few months, when asked what he did or might have done to cause his back problems. The statements of the Claimant in the month or so following the claimed injury are found to be more reliable than the subsequent history given to Dr. Pettine over one year later.

The hearing examiner agreed with Dr. Ruttle that because Russell did not mention his work injury in his first visit to Dr. Ideen, it was proper to conclude that the torn disc was the result of cumulative trauma and was not related to a specific work injury. The hearing examiner concluded that Russell had not met his burden of proof that the back injury was work-related and entered a second order denying benefits. This appeal followed.

## DISCUSSION

Russell first argues that the Office of Hearing Examiners lacked subject matter jurisdiction to hear this case because WYO. STAT. § 27–14–616 required the Division to refer this medically contested case to the medical commission for hearing. The statute states:

> § 27–14–616. Medical commission; hearing panels; creation; membership; duties; rulemaking.
>
> (a) The medical commission is created to consist of eleven (11) health care providers appointed by the governor as follows: ...
>
> (b) ... The duties of the commission shall be:
>
> * * *
>
> (iv) To furnish three (3) members of the commission to serve as a medical hearing panel to hear cases referred for hearing. **The division shall refer medically contested cases to the commission for hearing by a medical hearing panel. The decision to refer a contested case to the office of administrative hearings or a medical hearing**

**panel established under this section shall not be subject to further administrative review.** Following referral by the division, the hearing examiner or medical hearing panel shall have jurisdiction to hear and decide all issues related to the written notice of objection filed pursuant to W.S. 27–14–601(k).

* * *

At least one (1) member of each panel shall be a physician. One (1) member shall be designated by the executive secretary to serve as chairman of the panel. When hearing a medically contested case, the panel shall serve as the hearing examiner and shall have exclusive jurisdiction to make the final administrative determination of the validity and amount of compensation payable under this act.

WYO. STAT. § 27–14–616 (1997) (emphasis added).

 The Division argues first that, upon referral, the office had subject matter jurisdiction and, second, its decision to refer a case is not subject to judicial review based upon the express language of the statute. We agree that based on the plain language of the statute, the office had subject matter jurisdiction upon referral but disagree that the Division's decision is beyond our review. Plainly, the statute does not prohibit judicial review, it prohibits administrative review. When a statute within the Workers' Compensation Act is silent on the issue of judicial review, in the absence of clear and convincing evidence that the legislature otherwise intended, judicial review of administrative agency action takes place according to WYO. STAT. § 16–3–114. *See Taylor v. Wyoming Bd. of Medicine,* 930 P.2d 973, 974 (Wyo. 1997); *Pisano v. Shillinger,* 835 P.2d 1136, 1138–39 (Wyo.1992).

Russell contends that this Court is presented with a question of law to be reviewed in accordance with WYO. STAT. § 16–3–114(c). That portion of the statute states:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning

or applicability of the terms of an agency action.... The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

* * *

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;....

WYO. STAT. § 16–3–114(c) (1997).

 The interpretation of statutes is a question of law. We read unambiguous statutory language to give meaning to each word or phrase and so as not to render any part as superfluous. *Desotell v. State ex rel. Wyoming Worker's Comp. Div.*, 767 P.2d 998, 1002 (Wyo.1989). The use of "shall" in a statute is considered mandatory language requiring that the statute be obeyed. *Thomson v. Wyoming In–Stream Flow Committee*, 651 P.2d 778, 787 (Wyo.1982). This particular statute requires the Division to refer "medically contested" cases to a panel chosen from the medical commission and which includes a physician. The purpose of the statute is obviously to provide medical expertise to resolve medically contested claims. The Division does not have an option; it must determine if a case is medically contested and, if it is, it must be referred to the medical commission.

The Division has promulgated rules concerning "medically contested" cases:

Chapter 5: Determination By The Division—Coverage and Compensability and Claims.

* * *

Section 4. *Contested Case Proceedings.* Upon receipt of a request for hearing, the division shall immediately transmit a copy of the request and a notice of request for hearing to the Office of Administrative Hearings (OAH) or Workers' Compensation Medical Commission as appropriate.

(a) For purposes of referring contested cases to the Workers' Compensation Medical Commission for hearing, W.S. § 27–14–616(b)(iv), the phrase "medically contested cases" shall include those cases in which the primary issue is:

(i) A worker/claimant's percentage of physical impairment;

(ii) Whether a worker/claimant is permanently totally disabled;

(iii) Whether a worker/claimant who has been receiving temporary total disability benefits remains eligible for those benefits under W.S. § 27–14–404(c).

(iv) Any other issue, the resolution of which is primarily dependent upon the evaluation of conflicting evidence as to medical diagnosis, medical prognosis, the reasonableness and appropriateness of medical care, or the appropriateness of fees charged by a health care provider.

Workers' Compensation Rules and Regulations, Chap. 5, Sec. 4 (1997).

The Workers' Compensation Medical Commission has promulgated rules concerning the referral of medically contested cases and provides for the panel to receive referrals in two ways:

CHAPTER 3: REFERRAL OF MEDICALLY CONTESTED CASES

Section 1. *From the Division.*

(a) The commission shall accept for hearing those cases determined by the division to be medically contested under Workers' Compensation Rules and Regulations, Chapter VII, Section 2(f) [1], as amended, and referred by the clerks of district courts.

* * *

Section 2. *From the Office of Administrative Hearings.* Pursuant to W.S. 27–14–616(e), upon agreement of all parties to a case, the hearing examiner in a contested case which has been referred to the Office of Administrative Hearings may:

(i) transfer a medically contested case to the commission for review by a medical hearing panel; or

(ii) seek the advice of the commission on specified medical issues. The advice will be in writing and transmitted to the

---

1. The Workers' Compensation Rules and Regulations were republished in February of 1997 and the proper citation is now Chapter 5, Section 4(a).

hearing examiner for distribution to the parties and incorporation into the contested case record.

Workers' Compensation Medical Commission Rules of Practice and Procedure, Chap. 3, Sec. 1, 2 (1996).

Russell has not provided a record showing what information formed the basis for the Division's decision to refer this case to the OAH. The record before us does not contain either the Division's reason for denying benefits or the employer's objections to benefits. Although Russell does not refer to the Division's rule on medically contested cases or explain what particular issue made this a medically contested case, we assume he makes the argument on the basis of "(iv) Any other issue, the resolution of which is primarily dependent upon the evaluation of conflicting evidence as to medical diagnosis." Workers Compensation Rules, Chap. 5, Sec. 4(a)(iv) (1997).

■ After the referral was made, the contested case hearing was held, and from the transcript of the first hearing we gather that a threshold issue existed as to whether or not Russell had timely filed a claim for injury. He was injured on October 3, 1994, and did not file a claim until February 16, 1995, a four-month delay. The hearing examiner heard both parties on that issue, and the hearing progressed to evidence regarding whether the October 3 back injury was the cause of Russell's health problems. It is apparent that the Division and the employer conceded that Russell was experiencing medical symptoms but disputed whether or not those medical symptoms were caused by a work-related injury. The rule explains that unless resolution of this issue turns upon conflicting medical opinion, resolution of this issue is appropriately determined by OAH and not a medical panel. In this case, Russell does not claim that the nature of his injury is determinative of whether or not it is work-related, requiring the medical expertise of the panel. Based upon the evidence received by the hearing examiner, we find neither conflicting medical opinion nor the nature of the injury were central to the work-relatedness issue, and it was appropriate that

a hearing examiner resolved the issue of whether or not this injury was work-related.

■ We do note, however, that the medical commission has anticipated that referrals might not always be correct and has provided for referrals from hearing examiners to the medical panel upon agreement of all of the parties. Apparently, Russell did not seek such a transfer even after our remand. We believe that seeking a transfer is necessary to avoid waiver.

*Substantial Evidence*

■ Russell contends the decision stating he failed to carry his burden that his injuries are work-related is not supported by substantial evidence.

Our standard for reviewing findings of fact made in an administrative worker's compensation hearing is well settled. If, after examining the entire record, we find substantial evidence to support the agency's finding, we will not substitute our own judgment for that of the agency. Instead, we will uphold the agency's finding. Substantial evidence is relevant evidence which a reasonable person might accept as supporting the agency finding. . . . In addition, we examine only the evidence which favors the prevailing party, allowing every favorable inference, while omitting consideration of any conflicting evidence. . . . This is the applicable standard under which Wyo. Stat. § 16–3–114(c)(ii)(E) (1990) demands that findings of fact are to be tested. This rule clearly encompasses the proposition that the reviewing court does not reweigh the evidence. On judicial review of an agency determination, the burden usually is assigned to the appellant to demonstrate that the agency's findings and conclusions are not supported by substantial evidence.

* * *

Our review of an agency's findings of fact and conclusions of law is simple. First, if we can find from the evidence preserved in the record a rational view for the findings of fact made by the agency, we then say the findings are supported by substantial evidence. Second, we ask if the conclu-

sions of law made by the agency are in accordance with law.

*Wyoming Steel & Fab, Inc. v. Robles,* 882 P.2d 873, 876–77 (Wyo.1994) (citations and footnote omitted). Russell has the burden of proving entitlement to workers' compensation benefits. *Id.* at 875.

Russell's argument can be summarized as follows. The hearing examiner stated that he found Russell to be a credible witness. The evidence showed that Russell stopped working on his house in August. His pre-employment physical in September did not indicate any back problems. Russell suffered a back injury in October and before the end of the month was experiencing back pain and numbness. After evaluations by several specialists, Russell believed that his health problems were caused by the October 3 injury and filed for benefits. Dr. Ideen and Dr. Pettine testified that Mr. Russell's back pain and disability were related to the October 1994 work injury. The hearing examiner ignored this evidence and, instead, improperly speculated without evidence that Russell's injury was caused by building a house.

Our review shows that the second hearing did result in eliminating two of the possibilities for Russell's health problems that the hearing examiner had discussed in the first order denying benefits. The issue remaining was the third possibility noted in the first order:

> c. If the problems being experienced by the Claimant with regard to his back and legs were caused by trauma, it was most likely caused by something other than work, such as building a house in the few months preceding the claimed injury. Any injury on October 3, 1994, had resolved.

As our factual discussion related, the second hearing resulted in the hearing examiner rejecting Dr. Ideen's testimony as less reliable than his handwritten notes made at Russell's first appointment and rejecting Dr. Pettine's testimony because it was based upon the history provided by Russell. The decision whether the evidence showed injuries caused by a work-related incident or another incident was for the hearing examiner to make. Sufficient evidence exists in the record to justify either conclusion, but the decision is the prerogative of the finder of fact, the hearing examiner. *Robles,* 882 P.2d at 879. To reverse that decision would require us to reweigh the evidence and substitute our opinion for that of the agency, which we may not do. *Id.* at 879–80.

The decision is affirmed.