John A. BANDO, Appellant (Petitioner),

v.

CLURE BROTHERS FURNITURE; and State of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division, Appellees (Respondents).

No. 97–164.

Supreme Court of Wyoming.

May 18, 1999.

Deborah Ford Mincer, Cheyenne, WY, Representing Appellant. Argument presented by Ms. Mincer.

William U. Hill, Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Bernard P. Haggerty, Assistant Attorney General, Representing Appellee Workers' Safety and Compensation Div. Argument presented by Mr. Haggerty.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

LEHMAN, Chief Justice.

John A. Bando (Bando) appeals from the denial of his claim for worker's compensation benefits, arguing that the Office of Administrative Hearings was without jurisdiction because his case was medically contested. We disagree. The Wyoming Worker's Compensation Division, pursuant to its rule defining medically contested cases, properly determined that Bando's claim did not warrant medical commission review. In addition, we are satisfied that the record supports the hearing examiner's determination that Bando did not clearly prove that he suffered his hernia while working for Clure Brothers Furniture. We affirm the hearing examiner's order denying benefits.

## ISSUES

Bando presents the following issues for our review:

I. Whether the Worker's Compensation Division ignored the statutory mandate to send this case to the Medical Commission and, therefore, the decision should be reversed because the Office of Administrative Hearings had no subject matter jurisdiction?

II. Whether the decision of the Office of Administrative Hearings was not in accordance with law in ruling that the claim was not timely filed?

* Chief Justice at time of oral argument; retired November 2, 1998.

A. Whether the decision was not in accordance with law because it ignored this Court's precedents regarding the "date of diagnosis?"

B. Whether the decision was not in accordance with law because it misconstrued the requirements of Wyo. Stat. 27–14–502 regarding "investigating an accident" and "monitoring medical treatment?"

III. Whether the decision of the Office of Administrative Hearings was not in accordance with law in that it ignored applicable law on medical opinions, imposed upon Mr. Bando a burden of proof greater than that allowed by statute and failed to require the employer and Worker's Compensation Division to shoulder a burden of production of the evidence?

IV. Whether the decision of the Office of Administrative Hearings was arbitrary, capricious and an abuse of discretion and unsupported by substantial evidence?

Appellee, Wyoming Workers' Safety and Compensation Division (Division), counters with this statement of the issue:

A. Were the Hearing Examiner's decisions supported by substantial evidence and in accordance with law?

After the parties filed their principal briefs, we authorized supplemental briefing on the following issues:

1. Whether the Worker's Compensation Division adhered to fixed and objective procedural standards in making the decision to refer this case to the Office of Administrative Hearings rather than a medical hearing panel composed of three members of the Medical Commission?

2. Whether the Worker's Compensation Division's substantive decision to refer this case to the Office of Administrative Hearings rather than a medical hearing panel composed of three members of the Medical Commission was pursuant to fixed and objective standards and otherwise in accordance with law?

## FACTS

Bando began work as a furniture mover for Clure Brothers Furniture of Cheyenne on January 22, 1996. He quit on April 5, 1996. On April 8, Bando went to work for McIntyre's Garden Center. The following Sunday, April 14, Bando woke up with a "super ball" sized lump in his left groin. Bando was examined the next day by a nurse at the Veteran's Administration (VA) hospital and diagnosed with a bilateral inguinal hernia. On April 16, a VA physician confirmed the hernia diagnosis, and Bando filed an injury report in which he claimed he suffered his hernia while working at Clure Brothers.

On May 2, 1996, Bando underwent laproscopic surgery to repair the hernia. The surgery was successful, and Bando filed a claim with the Division seeking reimbursement for surgery costs as well as lost wages. Clure Brothers objected to Bando's claim by filing a written response. In addition to objecting to Bando's injury report as untimely, the response asserted that (1) Bando continued working and moving furniture for twenty days after the date he claims he suffered his hernia; (2) Bando never mentioned to anyone the possibility of having a hernia nor missed any work because of hernia pains; and (3) Bando was observed doing one-handed pushups in the store at a time when he was supposed to be suffering from a hernia.

The Division issued a final determination which denied Bando's claim for benefits. In addition to reciting Clure Brothers' timeliness objection, the final determination stated that the Division was denying the claim because it could not verify that Bando "received an injury at [his] place of employment." Bando objected and filed a timely written request for a hearing. After the Division assigned his case to the Office of Administrative Hearings (OAH), Bando moved to dismiss for lack of jurisdiction, arguing that the OAH did not have jurisdiction because his case was medically contested, and jurisdiction thus rested with the Worker's Compensation Medical Commission pursuant to Wyo. Stat. Ann. § 27–14–616 (Michie Cum.Supp.

1995). The hearing examiner denied Bando's motion and held a contested case hearing.

When, where, and how Bando suffered his hernia were all in dispute at the contested case hearing. Throughout, Bando has maintained that he was injured on March 15, 1996, while working for Clure Brothers. He claims that, when lifting a sofa, he felt a sharp pain in his groin area. A self-examination revealed a lump in the area, but Bando neither sought medical attention nor filed an injury report. There is also conflicting testimony over when Bando told his co-worker, Chuck Pyle, that he was injured and whether Pyle passed this information along to Clure Brothers.

Relying on two alternate grounds, the hearing examiner denied benefits. The hearing examiner determined that Bando had not satisfied his burden to clearly prove that he suffered his hernia while employed at Clure Brothers. Wyo. Stat. Ann. § 27–14–603 (Michie 1997). In addition, the hearing examiner ruled that Bando's injury report had not been filed in a timely fashion, as required by Wyo. Stat. Ann. § 27–14–502 (Michie Repl. 1991). Bando filed a timely appeal to the district court, which certified this case pursuant to W.R.A.P. 12.09.

After the parties filed their principal briefs in this court, we released our decision in *Russell v. State, ex rel. Workers' Safety and Compensation Div.*, 944 P.2d 1151 (Wyo. 1997). In *Russell*, we concluded that the Division's decision to refer a case to either the OAH or the Medical Commission, although not subject to further administrative review, is subject to judicial review. *Id.* at 1154. Relying on *Russell*, Bando requested, pursuant to W.R.A.P. 12.08, a remand to elicit evidence the Division relied upon in making its decision to refer this case to the OAH rather than the Medical Commission. We granted Bando's motion for remand, and the OAH held another evidentiary hearing.

At the hearing, Bando called both the Division administrator and the claims analyst who handled Bando's claim. The claims analyst testified that she relied on the Division's rule defining medically contested cases in making her decision to refer the case to the OAH. She further testified that Bando's

claim did not satisfy any of the criteria of the Division's rule. She affirmed that "[t]he problem was I couldn't substantiate that the injury happened at Clure Brothers the date he said it happened." After the hearing was completed, we authorized supplemental briefing on the two issues outlined above.

## STANDARD OF REVIEW

Our review of a hearing examiner's decision is limited to the determination of the matters specified in Wyo. Stat. Ann. § 16–3–114(c) (Michie 1997), which mandate that the reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

## DISCUSSION

### Referral to the OAH

█ In 1993, the Wyoming legislature created the Worker's Compensation Medical Commission. Wyo. Stat. Ann. § 27–14–616 (effective January 1, 1994). To fulfill one of its duties, the Medical Commission established a medical hearing panel that determines medically contested cases referred to it by the Division. The statute mandates that the Division "shall refer medically contested cases to the commission for hearing by a medical hearing panel." Wyo. Stat. Ann. § 27–14–616(b)(iv). Because of the mandatory "shall," the Division does not have an

option; it must determine if a case is medically contested and, if it is, that case must be referred to the Medical Commission. *Russell v. State, ex rel. Workers' Safety and Compensation Div.*, 944 P.2d at 1155.

Bando claims the Division should have referred his case to the Worker's Compensation Medical Commission because it was medically contested. We disagree with Bando and conclude that referral of his case to the Office of Administrative Hearings (OAH) was proper. First, we find that the Division followed and applied its own rule in making the referral decision. Second, the Division properly applied the standards and criteria contained in that rule when it determined that Bando's case was not medically contested.

■ As a preliminary matter, we note that we have an adequate record to review the Division's referral decision. The referral decision is subject to judicial review. *Russell*, 944 P.2d at 1154. In *Russell*, the record did not contain the Division's reason for denying benefits or the employer's objections to benefits. Thus, we were unable to review the Division's referral decision because Russell had not provided a record showing what information formed the basis for the Division's decision to refer that case to the OAH. *Id.* at 1156. In this case, after remand, included in the record are the Division's final determination, Clure Brothers' objections, testimony from the Division administrator, testimony from the claims analyst who handled Bando's claim, medical reports relied upon by the claims analyst, and various other exhibits. With this adequate record, we proceed to our review of the referral decision.

We will first determine whether the Division adhered to its own rules in deciding that Bando's case was not medically contested. *See MB v. Laramie County Dep't of Family Servs. in Interest of LB*, 933 P.2d 1126, 1130 (Wyo.1997) (administrative agency is bound to follow its own rules and regulations). Although the legislature has not defined "medically contested" case, the Division, pursuant to its rule-making authority, has promulgated the following interpretive rule:

(i) For purposes of referring contested cases to the Workers' Compensation Medi-cal Commission for hearing, W.S. § 27–14–616(b)(iv), *the phrase "medically contested cases" shall include those cases in which the primary issue is:*

(A) A worker/claimant's percentage of physical impairment;

(B) Whether a worker/claimant is permanently totally disabled;

(C) Whether a worker/claimant who has been receiving temporary total disability benefits remains eligible for those benefits under W.S. § 27–14–404(c)[;]

(D) *Any other issue, the resolution of which is primarily dependent upon the evaluation of conflicting evidence as to medical diagnosis*, medical prognosis, the reasonableness and appropriateness of medical care, or the appropriateness of fees charged by a health care provider.

Wyoming Workers' Compensation Rules, Regulations and Fee Schedule, ch. 5 § 3 (Jan.1996) (emphasis supplied).

■ The record is clear that the Division applied this rule in making its decision to refer Bando's case to the OAH. The Division administrator and the claims analyst both testified that, as a general matter, claims analysts are expected to follow Division rules and regulations in making a referral decision. Further, the claims analyst in Bando's case made the referral decision in light of the Division's rule defining medically contested cases. In making the decision, the claims analyst reviewed reports from Bando's surgeon as well as the Division's case-review doctor. She also looked at reports from the VA hospital. She analyzed each of the rule's four subsections, but she "didn't feel that [Bando's case] met any of the criteria we had in rules and regulations to go to the Medical Commission." After reviewing the evidence produced at the supplemental hearing, we are satisfied that the Division followed its own rules in making the referral decision.

■ We are also satisfied that referral to the OAH was substantively correct because Bando's case was not medically contested. Although Bando does not refer to the Division's rule, we presume that Bando is claim-

ing that his case is "primarily dependent upon the evaluation of conflicting evidence as to medical diagnosis." Ch. 5, § 3(i)(D). In the materials available to the claims analyst at the time of the referral decision, there was no conflicting evidence of medical diagnosis. The Division's case-review doctor did not question whether Bando had suffered a hernia. He did, however, question whether Bando suffered the hernia while working for Clure Brothers. Thus, the claims analyst concluded that: "The problem was I couldn't substantiate that the injury happened at Clure Brothers the date he said it happened."

Furthermore, the employer did not question whether Bando suffered a hernia. Although the employer did object to Bando's claim, its objections were based on other grounds. With both the employer and the Division essentially admitting that Bando had suffered a hernia, Bando's case was not "primarily dependent upon the evaluation of conflicting evidence as to medical diagnosis." The claims analyst correctly summed up Bando's case when she testified: "I did not believe this was a Medical Commission issue. I believe this was an issue involving establishing a work related injury." We conclude that the Division's referral to the OAH was the result of an appropriate application of the Division's rule on medically contested cases.

### The Hearing Examiner's Decision

Bando lodges numerous complaints about the hearing examiner's order denying benefits. First, Bando argues that the hearing examiner improperly ignored testimony from two doctors who testified on Bando's behalf. He further complains that the hearing examiner's decision was not in accordance with law because it subjected him to an enhanced burden of persuasion, while improperly relieving the employer and the Division of their burden of production. Finally, Bando contends that he clearly proved his claim, and the hearing examiner's decision is thus arbitrary, capricious, and an abuse of discretion.

■ Pursuant to Wyo. Stat. Ann. § 27–14–603(c) (Michie 1997), an employee seeking worker's compensation benefits for a hernia

bears a heavy burden. That statute provides:

(c) If an employee suffers a hernia, he is entitled to compensation if he clearly proves that:

(i) The hernia is of recent origin;

(ii) Its appearance was accompanied by pain;

(iii) It was immediately preceded by some accidental strain suffered in the course of the employment; and

(iv) It did not exist prior to the date of the alleged injury.

An employee's burden to "clearly prove" the elements of 27–14–603(c) requires evidence that is clear and convincing. *In re Hardison*, 429 P.2d 320, 322 (Wyo.1967). Clear and convincing evidence is something more than a preponderance, but less than proof beyond a reasonable doubt. *Id.* It is the kind of proof that would persuade a trier of fact that the truth of the contention is highly probable. *Matter of Paternity of TS*, 917 P.2d 183, 185 (Wyo.1996); *Matter of GP*, 679 P.2d 976, 982 (Wyo.1984).

Bando argues that the hearing examiner improperly ignored testimony from two doctors who testified on his behalf. The VA physician who diagnosed Bando's hernia asserted that the most probable cause of Bando's hernia was lifting furniture at Clure Brothers. Bando's surgeon testified that "the most likely cause after acknowledging his congenital predisposition for hernias would be his history of lifting." Bando asserts that, because the adverse parties did not present any conflicting evidence on the cause of his hernia, the hearing examiner did not consider the foregoing testimony in making the decision, and the decision is thus not in accordance with law.

■ When presented with medical opinion testimony, the hearing examiner, as the trier of fact, is responsible for determining relevancy, assigning probative value, and ascribing the relevant weight to be given to the testimony. *Clark v. State, ex rel. Workers' Safety and Compensation Div.*, 934 P.2d 1269, 1271 (Wyo.1997). In weighing the medical opinion testimony, the fact finder considers: (1) the opinion; (2) the reasons, if

any, given for it; (3) the strength of it; and (4) the qualifications and credibility of the witness or witnesses expressing it. *Id.* (quoting *Matter of Worker's Compensation Claim of Thornberg*, 913 P.2d 863, 868 (Wyo. 1996)).

■ The hearing examiner did not ignore the medical testimony, as Bando contends. Instead, the hearing examiner assigned the medical testimony the weight that was deemed appropriate. Because medical personnel must rely on a patient's assertion of when a hernia developed, neither Bando's surgeon nor the VA physician was able to state with any degree of medical certainty the date on which the hernia occurred. Therefore, the question of when Bando suffered his hernia became a question of Bando's credibility because the doctors' testimony necessarily relied on what Bando told them during examinations. The hearing examiner was thus free to assess what Bando told his doctors in light of the other facts and circumstances involved in this case. As will be discussed later, the hearing examiner carefully analyzed the surrounding facts and circumstances and determined that Bando had not clearly proved his claim. Additionally, the hearing examiner referred to both doctors' testimony in the order, a clear indication that she considered the testimony. We reject Bando's claim that the hearing examiner ignored the doctors' testimony.

■ Bando presents two claims that pertain to the hearing examiner's application of the burden of proof. The term "burden of proof" identifies two separate legal doctrines: the burden of persuasion and the burden of production. *Casper Iron & Metal, Inc. v. Unemployment Ins. Comm'n of Dep't of Employment*, 845 P.2d 387, 393 (Wyo.1993) (citing 1 D. Louisell & C. Mueller, *Federal Evidence* § 66 (1977)). The burden of persuasion, which normally becomes operative only after all the evidence is submitted, attaches to the party that runs the risk of nonpersuasion. This means if the party with the burden of persuasion has not sustained his burden, that party must fail. *Id.* The related term, burden of production, is also known as the burden of producing evidence or going forward with the evidence. This burden involves the obligation of a party to present, at the appropriate time, evidence of sufficient substance on the issue involved to permit the fact finder to act upon it. Unlike the burden of persuasion, the burden of production shifts during the presentation of evidence. *Id.*

Bando contends that the hearing examiner's decision was not in accordance with law because it relieved the Division and the employer of their burden of producing evidence. According to Bando, the burden of production shifted to the Division and Clure Brothers once Bando shouldered his burden of production by presenting evidence to establish each element of his claim. Bando contends that neither the Division nor the employer produced any evidence to disprove his claimed hernia. We view the record differently. The adverse parties did produce evidence, both through cross-examination and by their own witnesses' testimony, which tended to disprove Bando's claim. As will be discussed later, the Division and the employer developed contradictions to, and inconsistencies in, Bando's claim to the extent that the hearing examiner decided Bando had not clearly proved his claim. We do not agree that the hearing examiner relieved Clure Brothers or the Division of any burden. Rather, the hearing examiner simply held Bando to the enhanced burden of persuasion that attaches to proving a hernia.

Bando also claims that the hearing examiner's decision imposed a heavier burden of persuasion than that required by law. According to Bando, the hearing examiner's assertion that Bando "could have" been injured somewhere other than Clure Brothers indicates that the hearing examiner placed a heavier burden upon Bando than the "clearly prove" requirement of Wyo. Stat. Ann. § 27–14–603. To support his claim, Bando directs us to the following passages from the hearing examiner's decision: (1) "After Bando left Clure Brothers, he began working for McIntyre's Garden Center and could have been injured there;" and (2) "Bando could have suffered the hernia at any time prior to April 15, 1996."

When the two passages are placed in context, we cannot agree that the hearing exam-

iner increased Bando's burden of persuasion. The first passage is contained in the hearing examiner's findings of fact where she references Clure Brothers' objections. As such, it is merely a recitation of a parties' allegations. The second passage is located near the end of the hearing examiner's order. After discussing the inconsistencies and contradictions in Bando's claim, the order mentions that Bando could have been injured elsewhere than at Clure Brothers. The hearing examiner's reference to what could have happened is thus a natural result of Bando's failure to sustain his burden of proof, as well as an appropriate inference to be drawn from the evidence. We conclude that the hearing examiner did not place an increased burden of persuasion on Bando.

■■■■■ In the order denying benefits, the hearing examiner indicated that Bando failed to clearly prove that he suffered his hernia while working for Clure Brothers. Bando disagrees, insisting that he proved all elements of his claim. When, as here, a hearing examiner decides that a party charged with the burden of proof has failed to meet that burden, the case is reviewed under the "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" standard of Wyo. Stat. Ann. § 16–3–114(c)(ii)(A). *Pederson v. State, ex rel. Workers' Compensation Div.*, 939 P.2d 740, 742 (Wyo.1997); *Bohren v. State, ex rel. Worker's Compensation Div.*, 883 P.2d 355, 357–58 (Wyo.1994). The hearing examiner, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses. *Pederson*, 939 P.2d at 742. A hearing examiner's findings of fact are accorded deference, and the hearing examiner's decision will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence. *Id.* Demonstrating evidentiary contradictions in the record does not establish the ruling was irrational, but we do examine conflicting evidence to determine if the agency reasonably could have made its finding and order based upon all of the evidence before it. *Id.*

■■■■■ The hearing examiner's findings of fact include enough contradictory evidence, provided by Bando's own actions as well as other inconsistencies, to uphold the hearing examiner's determination that Bando did not clearly prove that he suffered his hernia while working for Clure Brothers. Although Bando claimed he suffered his hernia on March 15, the manager of Clure Brothers testified that he witnessed Bando performing one-handed pushups in the store after that date. Around the same time, Bando lifted the Clure Brothers' manager, a large man whose weight was estimated at 275 or 280 pounds, off the ground in a bear hug position. Most importantly, Bando kept performing his furniture moving duties for three weeks after the date he claims he suffered his hernia. During this time, he did not complain to Clure Brothers' management. According to the Division's physician, these actions are inconsistent with the actions of someone who is suffering from a hernia. *See In re Frihauf*, 58 Wyo. 479, 498, 135 P.2d 427, 433 (Wyo.1943) ("It is hardly probable that the workman could have done the heavy work he did on February 4, if the hernia had made its appearance previously.").

In addition to Bando's own actions that contradict his claim, the record includes other inconsistencies. Bando asserted that he and a co-worker were unloading an England Corsair furniture truck when he suffered his hernia. To counter this testimony, Clure Brothers' manager testified that England Corsair did not make a delivery on March 15, the day Bando claims he was injured. In addition, the co-worker testified that Bando told him in February that he thought he might have a hernia. These inconsistencies on the time of the claimed hernia are significant because time of injury is particularly important in cases involving hernias. *In re Hardison*, 429 P.2d at 322 (citing *In re Johnson*, 51 Wyo. 111, 114, 63 P.2d 791, 792 (1937)); *see also Big Horn Coal Co. v. LaToush*, 501 P.2d 1250, 1251 (Wyo.1972).

With the foregoing contradictions in the record, the hearing examiner concluded that Bando had not met his enhanced burden of clearly proving that his hernia occurred while working for Clure Brothers. Because our duty is not to re-weigh conflicting evidence, we cannot disagree. We hold that the hearing examiner's decision to deny benefits was

not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

*Timeliness*

Because we affirm the hearing examiner's determination that Bando did not suffer his injury while working for Clure Brothers, we do not reach the issue of whether Bando's injury report was filed in a timely fashion.

## CONCLUSION

Although the adverse parties disputed whether Bando had suffered his hernia while working for Clure Brothers, they did not challenge his hernia diagnosis. Thus, Bando's case did not qualify as a medically contested case under the Division's rule; referral to the OAH was proper. In addition, the record establishes that Bando kept moving furniture, performed one-handed pushups, and lifted a co-worker during the three weeks that followed the date that he claims he suffered his hernia. All the while, he never told Clure Brothers of his problem. With this evidence in the record, we uphold the hearing examiner's determination that Bando did not satisfy the heavy burden of clearly proving his hernia claim.

Affirmed.